IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| B.W | : | |
| | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | JURY TRIAL DEMANDED |
| vs. | : | |
| | : | |
| CAREER TECHNOLOGY CENTER OF | : | |
| LACKAWANNA COUNTY and | : | |
| VALLEY VIEW SCHOOL DISTRICT | : | NO. 3:19-CV-01146-MEM |
| | : | |
| Defendants | : | |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| M.W. & T.W. | : | |
| | : | CIVIL ACTION - LAW |
| Plaintiffs | : | |
| | : | JURY TRIAL DEMANDED |
| vs. | : | |
| | : | |
| CAREER TECHNOLOGY CENTER OF | : | |
| LACKAWANNA COUNTY and | : | |
| LAKELAND SCHOOL DISTRICT | : | NO. 3:19-CV-01148-MEM |
| | : | |
| Defendants | : | |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| M.W | : | |
| | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | JURY TRIAL DEMANDED |
| vs. | : | |
| | : | |
| CAREER TECHNOLOGY CENTER OF | : | |
| LACKAWANNA COUNTY and | : | |
| LAKELAND SCHOOL DISTRICT | : | NO. 3:19-CV-01154-MEM |
| | : | |
| Defendants | : | |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.K. | : | |
| | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | JURY TRIAL DEMANDED |
| vs. | : | |
| | : | |
| CAREER TECHNOLOGY CENTER OF | : | |
| LACKAWANNA COUNTY and | : | |
| MID VALLEY SCHOOL DISTRICT | : | NO. 3:19-CV-01149-MEM |
| | : | |
| Defendants | : | |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.R., a minor, by his parents and natural | : | |
| guardians, S.M and J.R. | : | |
| | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | JURY TRIAL DEMANDED |
| vs. | : | |
| | : | |
| CAREER TECHNOLOGY CENTER OF | : | |
| LACKAWANNA COUNTY and | : | |
| LAKELAND SCHOOL DISTRICT | : | NO. 3:19-CV-01150-MEM |
| | : | |
| Defendants | : | |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R.P., a minor, by his parent and natural | : | |
| Guardian, D.P. | : | |
| | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | JURY TRIAL DEMANDED |
| vs. | : | |
| | : | |
| CAREER TECHNOLOGY CENTER OF | : | |
| LACKAWANNA COUNTY and | : | |
| SCRANTON SCHOOL DISTRICT | : | NO. 3:19-CV-01153-MEM |
| | : | |
| Defendants | : | |

ii

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| E.P. | : | |
| | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | JURY TRIAL DEMANDED |
| vs. | : | |
| | : | |
| CAREER TECHNOLOGY CENTER OF | : | |
| LACKAWANNA COUNTY and | : | |
| LAKELAND SCHOOL DISTRICT | : | NO. 3:19-CV-01155-MEM |
| | : | |
| Defendants | : | |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| R.P. | : | |
| | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | JURY TRIAL DEMANDED |
| vs. | : | |
| | : | |
| CAREER TECHNOLOGY CENTER OF | : | |
| LACKAWANNA COUNTY and | : | |
| VALLEY VIEW SCHOOL DISTRICT | : | NO. 3:19-CV-01147-MEM |
| | : | |
| Defendants | : | |

## PLAINTIFFS' OMNIBUS BRIEF IN OPPOSITION TO RULE 12(b)(6) MOTIONS TO DISMISS OF DEFENDANT, CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY

**HOURIGAN, KLUGER & QUINN, P.C.**
*s/ Kevin C. Quinn*_____
Kevin C. Quinn, Esquire
Ryan M. Molitoris, Esquire
*Attorneys for Plaintiff B.W.*

**LENAHAN & DEMPSEY, P.C.**
*s/ John R. Lenahan, Jr.*_____

2407690_1

John R. Lenahan, Jr., Esquire
Lawrence J. Moran, Sr., Esquire
Christine S. Lezinski, Esquire
Matthew J. Butler, Esquire
*Attorneys for J.K, E.P, J.R., R.P.*

**ANZALONE LAW OFFICES, LLC**
*s/ Patrick J. Doyle, Jr.*_____
Patrick J. Doyle, Jr., Esquire
*Attorney for Plaintiff M.W.,T.W.,M.W*

**SCOTT SCHERMERHORN**
*s/ Scott Schermerhorn*_____
Scott Schermerhorn, Esquire
*Attorney for R.P.*

iv

## <u>TABLE OF CONTENTS</u>

I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY……………1

II.    QUESTIONS PRESENTED……………………………………………4

III.   LEGAL STANDARD………………………………………………...5

IV.    ARGUMENT…………………………………………………………6

     A.     PLAINTIFFS HAVE SUFFICIENTLY SHOWN THAT THEY
           HAVE A PLAUSIBLE CLAIM TO RELIEF UNDER TITLE IX,
           20 U.S.C. §1681 AGAINST DEFENDANT CAREER
           TECHNOLOGY CENTER OF LACKAWANNA COUNTY……....6

          (1)    Plaintiffs have properly alleged that Defendant Career
                Technology Center of Lackawanna County receives federal
                funding………………………………………………...7

          (2)    Plaintiffs' Complaints properly allege that each individual
                student was subjected to discrimination on the basis of
                sex………………………………………………………..8

          (3)    Plaintiffs' Complaints properly allege that an appropriate
                person had actual notice of the discrimination…………...……9

          (4)    Plaintiffs' Complaints properly set forth that the
                aforementioned administrators had actual notice of the
                discrimination and were deliberately indifferent to the
                discrimination…………………………………….…11

     B.     PLAINTIFFS HAVE SUFFICIENTLY SHOWN THAT THEY
           HAVE A PLAUSIBLE POST-MAY 2017 CLAIM TO RELIEF
           UNDER TITLE IX, 20 U.S.C. §1681 AGAINST DEFENDANT
           CAREER TECHNOLOGY CENTER OF LACKAWANNA
           COUNTY……………………………………………….…..17

     C.     PLAINTIFFS HAVE SUFFICIENTLY SHOWN THAT THEY
           HAVE A PLAUSIBLE RETALIATION CLAIM TO RELIEF
           UNDER TITLE IX, 20 U.S.C. §1681 AGAINST DEFENDANT
           CAREER TECHNOLOGY CENTER OF LACKAWANNA
           COUNTY…………………………………………...……23

(1)    The Complaints sufficiently allege that the abused students engaged in protected activity under Title IX………24

(2)    The Complaints sufficiently allege that Defendant CTC took adverse action against the abused students when the students reported what occurred and cooperated with authorities……………………….…24

D.    PLAINTIFFS' ALLEGATIONS IN COUNT IV ALLEGING VIOLATIONS OF THEIR FOURTEENTH AMENDMENT DUE PROCESS RIGHTS, 42 U.S.C. § 1983 ARE SUFFICIENT PURSUANT TO F.R.C.P. 8(A)(2) AND *IQBAL* TO WITHSTAND DEFENDANT'S MOTION TO DISMISS………………………...30

(1)    Custom and Practice…………………………………..…….39

(2)    Deliberate indifference………………………………….……..41

(3)    Failure to train………………………………………………42

E.    PLAINTIFFS HAVE ADEQUATELY PLED A §1983 CLAIM ON A STATE-CREATED DANGER THEORY…………………44

(1)    The Complaints sufficiently allege that the harm ultimately caused was foreseeable and fairly direct………..…45

(2)    The Complaints sufficiently allege that a state actor acted with a degree of culpability that shocks the conscience…………………………………………………………49

(3)    The Complaints sufficiently allege that a relationship between the state and the Plaintiffs existed…………………….………50

(4)    The Complaints sufficiently allege that the state actor affirmatively used his authority in a way that created a danger to Plaintiffs…………….…………………52

F.    PLAINTIFFS' COUNT VI ADEQUATELY PLEADS A §1983 FAILURE TO TRAIN/SUPERVISE CLAIM……………..55

V.    CONCLUSION…………………………………………………...………62

vi

# TABLE OF CITATIONS

Ashcroft v. Iqbal, 556 U.S. 662 (2009)…………………………………………5, 6

Bell Atlantic Corp. v. Twombly, 550 U.S. 545, 556 (2007)……………………5

Berg v. Cty. of Allegheny, 219 F.3d 261 (3d Cir. 2000)………………...……56, 57

Bd. Of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397 (S. Ct.1997)………………………………………………...………….34, 57

Bostic v. Smyrna Sch. Dist., 418 F.3d 355 (3d Cir.2005)…….............………..11, 14

Bright v. Westmoreland Cty., 443 F.3d 276 (3d Cir. 2006)...……………45, 50, 52

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)………..........24, 25

Carter v. City of Phila., 181 F.3d 339 (3d Cir. 1999)…….………………56, 57, 61

Chancellor v. Pottsgrove Sch. Dist., 501 F.Supp.2d 695 (E.D.Pa.2007).7, 9, 11, 38

Charlton v. Paramus Bd. of Educ., 25 F.3d 194 (3d Cir.1994)…………………..23

City of Canton, Ohio v. Harris, 489 U.S. 378 (1989)……………………….34, 56

Connick v. Thompson, 563 U.S. 51, 62 (2011)…………………………………..57

Cuvo v. Pocono Mtn. School Dist., Civ. No. 3:18-01210, 2019 WL 1424524 (M.D. Pa. Mar. 29,2019)……………...………….……………………..48, 51

Davis Next Friend LaShonda D. v. Monroe County Bd. of Ed., 526 U.S. 629 (1999)………………………………………….……………………………18, 19

DeShaney v. Winnebago Cty. Dept. of Soc. Svcs., 489 U.S. 189 (1989)…..…….44

Doe by Watson v. Russell Cty. Sch. Bd., 292 F. Supp. 3d 690 (W.D. Va. 2018) ....…………………………………………..19, 20, 21, 22

Douglas v. Brookville Area Sch. Dist., 836 F. Supp. 2d 329 (W.D. Pa. 2011)...…....……………………………………..8, 15, 16, 18

D.R. by L.R. v. Middle Bucks Area Vocational Tech Sch., 972 F.2d 1364 (3d Cir. 1992)……………………………………………………………..44

Elmore v. Cleary, 399 F.3d 279 (3d Cir. 2005)………………………………...44

E.N. v. Susquehanna Twp. Sch. Dist., No. 1:09-CV-1727, 2010 WL 4853700 (M.D. Pa. Nov. 23, 2010)………….....…………………………………23, 24, 25

Fowler v. UPMC Shadyside, 578 F. 3d 203 (3d Cir. 2009)……………………5, 6

Franklin v. Gwinnett Cnty. Pub. Sch., 503 U.S. 60 (1992)………………………7

Gabrielle M. v. Park Forest-Chicago Heights Il. Sch. Dist., 315 F.3d 817 (7th Cir. 2003)………………………………………………………………………………18

Gallagher v. Borough of Dickson City, 3:06-CV-1626, 2007 WL 2480977 (M.D. Pa.2007)………….....…………………………………………………..57, 62

Gebser v. Lago Vista Ind. Sch. Dist., 524 U.S. 274 (1998)..…………….7, 9, 19, 20

Haines v. Forbes Rd. Sch. Dist., No. 1:07-CV-00851, 2009 WL 89323 (M.D. Pa. Jan. 13, 2009)……………………………………………………….57

Hamilton v. Spriggle, 965 F.Supp.2d 550 (M.D. Pa. 2013)……....51, 52, 53, 54, 55

Henry v. Cty. of Erie, 728 F.3d 275 (3d Cir. 2013)…..……………………….48

Hill v. Cundiff, 797 F.3d 948 (11th Cir. 2015)……………………………….36

H.S. v. Stroudsburg Area School District, 2018 WL 4565557 (M.D. Pa. Sept. 24, 2018)…………………………………………………...……………………15

Jackson v. Birmingham Bd. of Educ., 544 U.S. 167 (2005)..………………………23

Kaucher v. Cty. of Bucks, 455 F.3d 418 (3d Cir. 2006)………………………49, 50

K.E. v. Dover Area School District, 2017 WL 4347393 (M.D. Pa. 2017)……36, 37

Kneipp v. Tedder, 95 F.3d 1199 (3rd Cir. 1996)…………………33, 34, 44, 46, 50

Kobrick v. Stevens, 2017 WL 3839946 (M.D. Pa. Sept. 1, 2017), subsequently aff'd, 763 F. App'x 216 (3d Cir. 2019)…………………………………….11, 19

L.R. v. School Dist. of Phila., 836 F.3d 235 (3d Cir. 2016)……………………..46

Natale v. Camden Cty. Correctional Facility, 318 F.3d 575 (3rd Cir. 2003)….34, 35

Mark v. Borough of Hatboro, 51 F.3d 1137 (3d Cir. 1995)……………………..52

Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530 (M.D. Pa. 2014)….44, 46

Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57…………………………….8

Moeck v. Pleasant Valley School District, 983 F.Supp.2d 516 (M.D. Pa. 2013)..44

Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658 (1978)……………………………………………………30, 33, 34, 35, 36, 37, 39

Montgomery v. De Simone, 159 F.3d 120 (3d Cir. 1998)……..…………….56, 61

Monroe v. Pape, 365 U.S. 167 (1961)……………………………………32, 33

Morrow v. Balaski, 719 F.3d 160 (3d Cir. 2013)……………………………44, 52

Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997)……………….49

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998)……………….8

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008)...5, 17, 22. 30, 45, 50

Pinker v. Roche Holdings, Ltd., 292 F.3d 371 (3d Cir. 2002)…………………….5

Reitz v. Cty. of Bucks, 125 F.3d 139 (3d Cir. 1997)……………………………..56

Rivas v. City of Passaic, 365 F.3d 181 (3d Cir. 2004)……………………………53

Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582 (3d Cir. 1998)..……..44

Sanford v. Stiles, 456 F.3d 298 (3d Cir. 2006)……..…………………………49, 50

2407690_1

Semple v. City of Moundsville, 195 F.3d 708 (4th Cir. 1999)…..………………..35

Shepard v. Kemp, 912 F. Supp. 120 (M.D. Pa. 1995, Muley, J.)….……………..39

Sullivan v. Warminster Twp., 765 F. Supp. 2d 687 (E.D. Pa. 2011)….…………56

Walker v. City of N.Y., 974 F.2d 293 (2d Cir. 1992)……………………………57

Warren ex rel. Good v. Reading Sch. Dist., 278 F.3d 163 (3d Cir. 2002)…………9

## STATUTES

Title 34 of the Code of Federal Regulations……………………………………21

Title IX of the Education Amendments of 1972…….………………………..6, 7

20 U.S.C. § 1681(a)……………………………………………...………………7

23 Pa. C.S.A. §6311…………..……………………………..2, 10, 11, 12, 16, 42

U.S. Dep't of Educ., Office for Civil Rights, Dear Colleague Letter (Jan. 25, 2006), www2.ed.gov/about/offices/list/ocr/letters/sexhar-2006.pdf…..…………..….…..19

U.S. Dep't of Educ., Office for Civil Rights, Dear Colleague Letter (April 4, 2011),www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf)….….21-22

34 C.F.R. § 106.3………………………..……………………………… …19, 20

42 U.S.C. §1983…………………………………………………………32, 33

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

The above-captioned cases arise out of a systemic pattern of ongoing sexual abuse of minors that were enrolled in the Automotive Technology program at the Career Technology Center of Lackawanna County ("CTC") during the 2016-2017 school year by Richard Humphrey, an instructor of the CTC Automotive Technology class. During this school year, Richard Humphrey began making unwanted sexual advances towards several minor male students in the class, including but not limited to rubbing their backs and shoulders; putting his arms around them; acting in a creepy and weird fashion; placing his hand on students' thighs; groping, caressing and/or slapping their genital areas; following a male student into the bathroom and offering to "dab" the student's penis after he urinated; and speaking to them in a completely inappropriate, vulgar and sexually suggestive manner. (e.g. See J.K. Complaint, No. 3:19-CV-01149-MEM, Doc. 1-2, ¶20)

This inappropriate conduct was an open secret among the students in the Automotive Technology class, among the students in the other classes at Defendant CTC and among the staff and/or administrators of Defendant CTC. Id. at ¶21. Many of the aforementioned instances of inappropriate sexual advances, abuses and/or student molestation by Richard Humphrey occurred right in the classroom with at least one other adult teacher/teacher's aide present in the classroom, including Joseph Granteed, Robert Hudak, and/or Louis Morgantini. Id. at ¶22.

1

On multiple separate occasions early in March 2017, Louis Morgantini, a teacher in the Automotive Technology class was told by students and/or acknowledged to the students in the class that he was aware of this behavior. Id. at ¶23, ¶26, ¶29. As a mandatory reporter under Pennsylvania law (23 Pa. C.S.A. §6311), Mr. Morgantini had an affirmative and non-delegable duty to report the behavior of Richard Humphrey and disclose what he had witnessed and/or learned from the students to the proper authorities including, but not limited to the administrators of Defendant CTC, Childline and/or the administrators of the home school districts of each student involved. Id. at ¶23, ¶26, ¶29. Upon information and belief, Mr. Morgantini did report the behavior of Richard Humphrey to the administrators of Defendant CTC and/or the Defendant sending school districts, but no action was taken by the administrators and said Defendants clearly failed in their respective duties to disclose the multiple reports of child abuse by Richard Humphrey to Childline and/or facilitate the cooperation of Defendants CTC and the Defendant sending school districts with the investigation into these reports of Humphrey's abuses. Id. Alternatively, if Mr. Morgantini did not report this behavior to the appropriate administrators, such fact demonstrates the Defendants' failure to implement and/or enforce adequate policies and procedures regarding mandatory reporting obligations and/or train school employees on how to maintain/protect/preserve minor students to prevent sexual misconduct, sexual abuse

2

and/or sexual harassment and/or comply with their mandatory reporting obligations. Id. at ¶25, ¶28, ¶31.

A Childline report was finally initiated on May 13, 2017 regarding Richard Humphrey's behavior and an investigation resulted in numerous allegations of instances of sexual misconduct, sexual abuse and/or sexual harassment committed. Id. at ¶39-¶40. Humphrey was eventually arrested and charged with multiple criminal counts and he later pled guilty to eleven (11) counts of indecent assault and one count of corruption of minors. Id. at ¶42.

The multiple students in the Automotive Technology class affected by Humphrey's abhorrent behavior were never afforded the proper support in the wake of this sexual abuse scandal in the form of adequate health, psychological, counseling and academic assistance and services to help remedy the harm each suffered due to discrimination and harassment. Id. at ¶45. Instead of providing appropriate support for the abuse the minor students suffered, the various Defendants retaliated against the students involved by withholding appropriate services and singling them out for their roles in what occurred. Id. at ¶46 - ¶49. Other acts of retaliation specific to each Plaintiff will be addressed in more detail below.

Plaintiffs' Complaints outline causes of actions against Defendant CTC and the sending or home school districts for violations of Title IX (including separate counts for post-May 2017 and for retaliation); §1983 claims relating to personal

security and bodily integrity under the Fourteenth Amendment; §1983 claims relating to state created danger; and §1983 claims relating to failure to train and supervise.

Each of Plaintiffs' Complaints are substantially similar in their allegations aside from some case specific details. For this reason, when Plaintiffs highlight a portion of a particular Complaint as an example, it is a uniform allegation that is present in all of the Plaintiffs' Complaint.

## II.   QUESTIONS PRESENTED

A. Whether Count I of Plaintiffs' Complaints sufficiently alleges a cause of action under Title IX against Defendant CTC?

B. Whether Count II of Plaintiffs' Complaints sufficiently alleges a cause of action under Title IX for the time period after May 2017 against Defendant CTC?

C. Whether Count III of Plaintiffs' Complaints sufficiently alleges a cause of action for retaliation under Title IX against Defendant CTC?

D. Whether Count IV of Plaintiffs' Complaints sufficiently alleges a §1983 cause of action under the 14th Amendment against Defendant CTC?

E. Whether Count V of Plaintiffs' Complaints sufficiently alleges a §1983 cause of action for State Created Danger against Defendant CTC?

F. Whether Count VI of Plaintiffs' Complaints sufficiently alleges a §1983 cause of action for Failure to Train and Supervise against Defendant CTC?

Suggested Answers: In the Affirmative.

## III.   LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Courts accept all factual allegations in the complaint as true and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)(citing Pinker v. Roche Holdings, Ltd., 292 F.3d 371, 374 n.7 (3d Cir. 2002)). The complaint must contain enough factual allegations to raise the right to relief from a speculative to a plausible level. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 545, 556 (2007). A complaint should not be dismissed merely because it appears unlikely that the plaintiff will ultimately prevail on the merits. Phillips, 515 F. 3d at 231 (citing Twombly, 127 S. Ct. at 1964-65, 1969 n.8). Instead, a Court should consider the factual allegations in the complaint in the light most favorable to the plaintiff. Id. at 233. Furthermore, the plaintiff must describe " 'enough facts to raise a reasonable expectation that **discovery** will **reveal evidence** of' [each] necessary element" of the claims alleged in the complaint. Id. at 234 (quoting Bell Atlantic Corp. at 556)(emphasis added). The plaintiff  must allege facts that "justify moving the case beyond the pleadings to the next stage of the litigation." Id. at 234-35.

To determine whether the complaint should be dismissed for failure to state a claim, the Third Circuit articulated a two part test. Fowler v. UPMC Shadyside, 578

F. 3d 203, 210 (3d Cir. 2009). First, all well-pleaded facts are accepted as true and any legal conclusions may be disregarded. Id. at 210-11. Second, the Court must determine whether the facts as alleged are "sufficient to show that the plaintiff has a 'plausible claim to relief.'" Id. at 211 (citing Iqbal, 129 S. Ct. at 1950). In short, a complaint must "show" an entitlement to relief with its facts. Id. For reasons stated below, Plaintiffs' Complaints allege sufficient factual allegations to raise plausible claims to relief.

## IV.   ARGUMENT

At the outset, it must be pointed out that the instant matter involves the widespread sexual abuse and harassment of not just one, but eight minor students in the care of Defendant CTC and its administrators (acting *in loco parentis*). Defendant CTC is holding all the information Plaintiffs need to prove their causes of action and, at a bare minimum, Plaintiffs must be permitted the opportunity to conduct discovery to further reveal additional evidence supportive of their claims because the Plaintiffs' Complaints plead all the necessary facts to establish the causes of action under Title IX and Section 1983, as further discussed below.

**A. Plaintiffs have sufficiently shown that they have a plausible claim to relief under Title IX, 20 U.S.C. §1681 against Defendant Career Technology Center of Lackawanna County.**

Title IX of the Education Amendments of 1972 provides in pertinent part that "No person in the United States shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance [.]" 20 U.S.C. § 1681(a).

Title IX provides a private cause of action against a school district for charges of gender-based discrimination in connection with sexual harassment and sexual abuse. Franklin v. Gwinnett Cnty. Pub. Sch., 503 U.S. 60, 76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). There are four elements that must be met in a situation where a school district may be liable for a teacher's sexual relationship with a student under Title IX: "(1) the school district received federal financial assistance, (2) the student was subjected to discrimination on the basis of sex, and (3) an "appropriate person" (4) had actual notice of, and was deliberately indifferent to, the discrimination." Chancellor v. Pottsgrove Sch. Dist., 501 F.Supp.2d 695, 705 (E.D.Pa.2007) (citing Gebser v. Lago Vista Ind. Sch. Dist., 524 U.S. 274, 277, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998)). Plaintiffs will address each element in turn.

**(1) Plaintiffs have properly alleged that Defendant Career Technology Center of Lackawanna County receives federal funding.**

Within each Complaint, Plaintiffs have sufficiently alleged that Defendant Career Technology Center of Lackawanna County received federal assistance. (e,g See J.K. Complaint, No. 3:19-CV-01149-MEM, Doc. 1-2, ¶5). Consequently, Plaintiffs' Complaints successfully meet the first requirement under Title IX.

**(2) Plaintiffs' Complaints properly allege that each individual student was subjected to discrimination on the basis of sex.**

As noted above, Title IX prohibits certain forms of sex-based "discrimination" in the educational context. 20 U.S.C. § 1681(a). "Where an individual's interactions with another person are sexual in nature, it is reasonable to assume that those interactions are motivated, at least in part, by the other person's 'sex.'" Douglas v. Brookville Area Sch. Dist., 836 F. Supp. 2d 329, 344 (W.D. Pa. 2011)(citing Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). "In order to constitute 'harassment', however, sexually-oriented conduct must be 'unwelcome.' Id. at 344 (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

Without question, Plaintiffs have sufficiently alleged throughout their respective Complaints in these consolidated matters that each Plaintiff was subjected to discrimination on the basis of sex. Plaintiffs have alleged that: each Plaintiff was a minor male student in the Automotive Technology class at Defendant CTC during the 2016-2017 school year; that Richard Humphrey was their teacher; and that he repeatedly made unwanted sexual advances towards the male students in the class by, *inter alia*, rubbing their backs and shoulders, putting his arms around them, acting in a creepy and weird fashion, placing his hand on their thighs, groping, caressing and/or slapping their genital areas, and speaking to them in a completely inappropriate, vulgar and sexually suggestive manner. (e.g. See J.K. Complaint, No.

8

3:19-CV-01149-MEM, Doc. 1-2, ¶¶ 13, 19, 20). These unwanted sexual advances, harassment and abuse by Humphrey clearly demonstrate that Plaintiffs were subject to discrimination and Plaintiffs' Complaints, therefore, meet the second element of a Title IX claim for a teacher's sexual contact with a student.

### (3) Plaintiffs' Complaints properly allege that an appropriate person had actual notice of the discrimination.

The third prong of a Title IX claim for gender-based discrimination in connection with sexual harassment and sexual abuse entails that an "appropriate person" has been made aware of the alleged discrimination. Chancellor, *supra* at 705. The United States Supreme Court defined an "appropriate person" as "an official of the recipient entity with authority to take corrective action to end the discrimination." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290, 118 S. Ct. 1989, 1999, 141 L. Ed. 2d 277 (1998). The facts of Gebser involved a high school principal as an "appropriate person" and the Third Circuit has recognized that a high school principal qualifies as an "appropriate person" for Title IX purposes to subject a school district to liability. Warren ex rel. Good v. Reading Sch. Dist., 278 F.3d 163, 172 (3d Cir. 2002).

Within Plaintiffs' Complaints, it is specifically set forth that Louis Morgantini, an employee of Defendant CTC and mandatory reporter of suspected child abuse under Pennsylvania law, was aware of Humphrey's inappropriate

behavior and did report his knowledge of the behavior to the "administrators of

Defendant CTC":

> Upon information and belief, as a mandatory reporter under Pennsylvania law (23 Pa. C.S.A. §6311), Mr. Morgantini had an affirmative and non-delegable duty to report the behavior of Richard Humphrey and disclose what he had witnessed and/or learned from the students to the proper authorities including, but not limited to the **administrators of Defendant CTC**, Childline and/or the administrators of Defendant Mid Valley School District. The administrators of Defendant CTC and/or Defendant Mid Valley School District would in turn also have a duty to disclose the report of child abuse to Childline and facilitate the cooperation of Defendant CTC and Defendant Mid Valley School District with the investigation of the report of child abuse.

> Upon information and belief, Mr. Morgantini, in accordance with his mandatory reporting duty under 23 Pa. C.S.A. §6311, did report the behavior of Richard Humphrey to **the administrators of Defendant CTC** and/or Defendant Mid Valley School District, but no action was taken by the administrators of Defendant CTC and/or Defendant Mid Valley School District and said Defendants clearly failed in their respective duties to disclose the multiple reports of child abuse by Richard Humphrey to Childline and/or facilitate the cooperation of Defendants CTC and Mid Valley School District with the investigation into these reports of Humphrey's abuses.

(e.g. See J.K. Complaint, No. 3:19-CV-01149-MEM, Doc. 1-2, ¶¶ 24-25, 27-28, 30-

31)(emphasis added). Furthermore, under the referenced 23 Pa. C.S.A. §6311,

Pennsylvania law requires that:

> Whenever a person is required to report under (b) in the capacity as a member of the staff of a medical or other public or private institution, school, facility or agency, that person shall report immediately in accordance with section 6313 and shall immediately thereafter notify **the person in charge** of the

> institution, school, facility or agency or the designated agent of
> the person in charge.

23 Pa. C.S.A. §6311(c)(emphasis added).

Plaintiffs contend that this Court, accepting these allegations that Morgantini did report his knowledge to the administrators (e.g. persons in charge) of Defendant CTC as true under the 12(b)(6) standard applicable herein, must find that Plaintiffs have appropriately met the third requirement to plausibly state a claim for relief under Title IX. Plaintiffs, at a minimum, must be allowed to proceed to further discover and flush out the specifics to support this allegation.

### (4) Plaintiffs' Complaints properly set forth that the aforementioned administrators had actual notice of the discrimination and were deliberately indifferent to the discrimination.

The fourth and final prong of a claim under Title IX requires that the "appropriate person" had actual notice of, and was deliberately indifferent to, the discrimination." Chancellor, *supra* at 705. As to the actual notice requirement, "[a]n educational institution has 'actual knowledge' [or 'actual notice'] if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." Id. at 708 (quoting Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 361 (3d Cir.2005)). "An official decision not to remedy any type of discrimination demonstrates deliberate indifference." Kobrick v. Stevens, 2017 WL 3839946, at *16 (M.D. Pa. Sept. 1, 2017), subsequently aff'd, 763 F. App'x 216 (3d Cir. 2019)(citing Bostic, 418 F.3d at 361).

Plaintiffs have sufficiently pled facts giving rise to their claims that Defendant CTC knew of underlying facts that put Defendant CTC on notice that Richard Humphrey posed a danger to minor male students in the Automotive Technology class. On multiple occasions in early March 2017, Louis Morgantini: discussed with students that Humphrey was acting inappropriately with the minors and that he would "keep an eye on him" Id. at ¶23; had a discussion with other minor students in the class wherein minor student J.R. indicated that Humphrey had made contact with his genital area by "ball-tapping" him and had followed another student into the bathroom and tried to grope him - Morgantini responded by stating that such conduct by Humphrey "was not right" Id. at ¶26; and had another discussion with a group of students wherein minor J.K. and another student specifically told Morgantini that Humphrey was rubbing J.K.'s shoulders and making him feel uncomfortable and asked "what's up with Mr. Humphrey?" Id. at ¶29.

Turning again to those same paragraphs cited above wherein Morgantini reported what he knew, Plaintiffs' Complaints specifically allege that the administrators of Defendant CTC had actual knowledge of Humphrey's inappropriate behavior in the form of unwanted sexual advances and abuse through the reports made by Louis Morgantini, yet the administrators took no action:

> Upon information and belief, Mr. Morgantini, in accordance with his mandatory reporting duty under 23 Pa. C.S.A. §6311, **did report the behavior of Richard Humphrey to the administrators of Defendant CTC** and/or Defendant Mid

12

> Valley School District, but **no action was taken by the administrators of Defendant CTC** and/or Defendant Mid Valley School District and said Defendants clearly failed in their respective duties to disclose the multiple reports of child abuse by Richard Humphrey to Childline and/or facilitate the cooperation of Defendants CTC and Mid Valley School District with the investigation into these reports of Humphrey's abuses.

(e.g. See J.K. Complaint, No. 3:19-CV-01149-MEM, Doc. 1-2, ¶¶ 25, 28, 31)(emphasis added). Plaintiffs' allegations demonstrate that the administrators of Defendant CTC had actual notice of Humphrey's abhorrent behavior and despite being made aware of the behavior, the administrators took "no action" to stop the abuse – either by adequately monitoring or supervising Richard Humphrey; investigating the inappropriate conduct; protecting the minors in the class from sexual misconduct/harassment/abuse; removing and/or suspending Richard Humphrey. Id. ¶¶50-51. Plaintiffs have sufficiently pled the elements of actual notice and deliberate indifference to plausibly state a claim for relief under Title IX.

In addition to those paragraphs detailing what Defendant CTC actually learned from its teacher Morgantini, Plaintiffs' Complaints additionally allege other instances wherein, at the very least, Defendant CTC was aware of underlying facts that put Defendant CTC on notice that Humphrey posed a danger to students including that: (1) the aforementioned behavior and conduct of Humphrey was open, widespread and known by students, staff and administrators of Defendant CTC Id. at ¶21, ¶32; (2) Humphrey would also offer students "special privileges" so that they

13

could come into his classroom shop at off-peak hours where he would sexually abuse minor students and this practice was known by employees and agents of Defendant CTC and allowed to continue unabated and unsupervised. Id. at ¶¶34-35; and (3) other minor students did report to teachers and individuals in authority positions the sexual abuse and harassment being perpetrated on them by Humphrey Id. at ¶37. Despite the knowledge of these underlying facts, the employees, agents and administrators of Defendant CTC took no action to stop the abuse or take any appropriate steps to investigate Humphrey's behavior.

Defendant CTC asserts that Plaintiffs have failed to allege that an appropriate person or persons had actual knowledge, a claim that is belied by the plain allegations contained in Plaintiffs' Complaints. Further, the cases cited by Defendant CTC are distinguishable from the instant matter, both factually and legally.

First, Defendant CTC cites Bostic v. Smyrna Sch. Dist. 418 F.3d 355, 361 (3d Cir.2005) for the proposition that "reports from parents or students about a teacher making inappropriate comments, for example, are not sufficient to show knowledge of a sex based discrimination." (e.g. No. 3:19-CV-01149-MEM, Doc. 11 at p. 11). The allegations contained in Plaintiffs' Complaints here rise to another level than reports from parents or students about inappropriate comments by a teacher. Instead, Plaintiffs have pled that a teacher was **specifically** told by a student that Humphrey, *inter alia*, had made contact with his genital area by "ball-tapping" him and had

14

followed another student into the bathroom and tried to grope him (¶26). The factual circumstances in <u>Bostic</u> cannot be equated. Further, <u>Bostic</u> involved an appeal from a jury verdict after discovery had concluded and a full trial had concluded, thus making it clearly at a different stage of litigation than the instant matter at the 12(b)(6) motion stage.

Next, Defendant CTC similarly cites to <u>H.S. v. Stroudsburg Area School District</u>, 2018 WL 4565557 (M.D. Pa. Sept. 24, 2018) for the proposition that "alleging that 'teachers, supervisors, coaches, and school security personnel knew that [plaintiff] was visiting teacher in classroom' is insufficient." (e.g. No. 3:19-CV-01149-MEM, Doc. 11 at p. 11). Therein, the Court dismissed the Title IX claim of H.S. for improperly pleading her claim on the basis of constructive notice. As noted above, Plaintiffs' allegations are not only more detailed than those allegations made by H.S., but they also sufficiently set forth allegations of actual notice by Defendant CTC.

Lastly, Defendant CTC cites to <u>Douglas v. Brookville Area Sch. Dist.</u>, 836 F. Supp. 2d 329, 344 (W.D. Pa. 2011) for the proposition that "a state duty to report child abuse is not sufficient to show actual knowledge of an appropriate person." (e.g. No. 3:19-CV-01149-MEM, Doc. 11 at p. 11). This proposition in <u>Douglas</u> is distinguishable from the instant matter because (1) it occurred at the summary judgment stage after the parties had completed discovery; (2) the facts involved a

15

teacher overhearing conversations about inappropriate text messages between another teacher and a student; and (3) the plaintiff in <u>Douglas</u> was attempting to equate the teacher as an "appropriate person" for Title IX purposes because he was a mandatory reporter under 23 Pa. C.S.A. §6311. <u>Douglas</u> is factually and legally distinguishable as Plaintiffs have not yet had the opportunity to conduct discovery including the deposition of Louis Morgantini and the administrators of Defendant CTC, Thomas Baileys and George Filak. In addition, <u>Douglas</u> involved rumors, not specific allegations of inappropriate behavior and conduct as pled in Plaintiffs' Complaints. Finally, Plaintiffs herein are not maintaining that Louis Morgantini is an "appropriate person" under the Title IX standard as the plaintiff in <u>Douglas</u> did; rather, Plaintiffs contend that Morgantini, in accordance with his duties under 23 Pa. C.S.A. §6311, reported what he knew about Humphrey's behavior to the **administrators of Defendant CTC** and they took no action in response. <u>Douglas</u> should not be viewed as applicable at this stage of the proceedings.

Plaintiffs have sufficiently pled a cause of action under Title IX for which each respective student is entitled to relief in Count I. Plaintiffs' Complaints contain sufficient facts to show that Plaintiffs have a plausible right to relief. **Most importantly**, Plaintiffs' Complaints, describe " 'enough facts to raise a reasonable expectation that discovery will reveal evidence of '[each] necessary element" of the claims alleged in the complaint" and allege facts that "justify moving the case[s]

16

beyond the pleadings to the next stage of the litigation." <u>Phillips</u>, *supra* at 234-35. As a result, Defendant CTC's motion to dismiss Plaintiffs' causes of action under Title IX should be denied at this early stage of the proceedings. This is particularly so given the fact that the instant matter involves widespread sexual abuse of multiple minor students under the care of Defendant CTC and its administrators.

**B. Plaintiffs have sufficiently shown that they have a plausible Post-May 2017 claim to relief under Title IX, 20 U.S.C. §1681 against Defendant Career Technology Center of Lackawanna County.**

Count II of Plaintiffs' Complaints sets forth causes of action under Title IX relative to the time period *after* May 2017 when Richard Humphrey had been suspended from his position and subsequently arrested for the discrimination, abuse and harassment of the students in the Automotive Technology class. Plaintiffs set forth that Defendant CTC had actual knowledge of the misconduct and the authority to take corrective action to provide, offer, recommend or coordinate adequate health, psychological, counseling and academic assistance and services to Plaintiffs to help remedy the harm suffered due to discrimination and harassment, including sexual abuse and harassment, yet Defendant CTC chose not to do so in violation of Title IX. (e.g. See J.K. Complaint, No. 3:19-CV-01149-MEM, Doc. 1-2, ¶¶ 76-77).

Defendant CTC was unquestionably put on notice of Humphrey's conduct when a Childline report was initiated on May 13, 2017 and an investigation commenced by the Scranton Police Department. Plaintiffs contend that despite

2407690_1

having actual knowledge of the abuse and the harm suffered, Defendant CTC never provided Plaintiffs with the appropriate assistance to remedy the effects of the harm each suffered because of the actions and misconduct of Humphrey. To that end, Plaintiffs' Complaints sufficiently set forth a Title IX claim for the time period after May 2017.

Defendant CTC seeks to dismiss Count II of Plaintiffs' Complaints contending that Title IX does not require any form of post-knowledge remedial action as alleged in Plaintiffs' Complaints.  Defendant cites primarily to Davis Next Friend LaShonda D. v. Monroe County Bd. of Ed., 526 U.S. 629 (1999) and cases that follow Davis for support (e.g. Gabrielle M. v. Park Forest-Chicago Heights Il. Sch. Dist., 315 F.3d 817 (7th Cir. 2003) and Douglas v. Brookville Area Sch. Dist., 836 F. Supp. 2d 329 (W.D. Pa. 2011)). However, Defendant's reliance on Davis is misplaced because the Court therein addressed Title IX in the context of student-on-student sexual harassment as opposed to teacher on student sexual harassment where the teacher is under the school district's employ.

Further, Defendant CTC's argument attempting to impose an additional, more stringent standard for deliberate indifference that "so long as its response is not 'clearly unreasonable', it cannot have acted with the requisite deliberate indifference to incur Title IX liability" (e.g. No. 3:19-CV-01149-MEM, Doc. 11 at p. 12-13)(citing Gabrielle M., supra at 824 (quoting Davis, supra at 648-649)) is

18

unavailing and must be rejected. The <u>Davis</u> court **limited** this deliberate indifference standard to student-on-student harassment fact patterns, stating "[s]chool administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed 'deliberately indifferent' to acts of **student-on-student** harassment **only** where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." <u>Davis</u>, 526 U.S. 648. (emphasis added). In the instant fact pattern that does not involve student on student harassment, the correct standard for showing deliberate indifference under Title IX continues to be either (1) "[a]n official decision not to remedy any type of discrimination" or (2) "a clearly unreasonable response to actual notice of harassment". <u>Kobrick v. Stevens</u>, 2017 WL 3839946, at *16 (M.D. Pa. Sept. 1, 2017), <u>subsequently aff'd,</u> 763 F. App'x 216 (3d Cir. 2019).

Plaintiffs submit that their Count II under Title IX has been recognized and finds support under the language of <u>Gebser v. Lago Vista Ind. Sch. Dist.</u>, 524 U.S. 274 (1998). Under Title IX, once a school knows of sexual harassment of a student, the school district has an affirmative duty "**to take steps not only to end the harassment, but also to 'prevent its recurrence, and remedy its effects**.'" <u>Doe by Watson v. Russell Cty. Sch. Bd.</u>, 292 F. Supp. 3d  690, 708 (W.D. Va. 2018)(citing U.S. Dep't of Educ., Office for Civil Rights, Dear Colleague Letter (Jan. 25, 2006),  www2.ed.gov/about/offices/list/ocr/letters/sexhar-2006.pdf; *see also* 34

C.F.R. § 106.3 (requiring schools to take remedial action "to overcome the effects of" discrimination on the basis of sex))(emphasis added); see also <u>Gebser</u> 524 U.S. at 290. The Supreme Court has instructed that, under Title IX, a school district is not liable for damages based on sexual harassment of a student by a teacher "unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." <u>Gebser</u>, 524 U.S. at 290. Thus, the premise of a school district's liability under Title IX "is an official decision by the recipient not to remedy the violation." <u>Id</u>. As the district court in <u>Doe</u> stated, "the [Supreme] Court adopted that rule because the Title IX *remedial scheme* is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation[.]" <u>Doe by Watson v. Russell Cty. Sch. Bd.</u>, 292 F. Supp. 3d 690, 708 (citing <u>Gebser</u> at 277)(emphasis added). Accordingly, a public school district can be held liable for violating Title IX by "failing to take corrective action" after a teacher's arrest and confession to sexual abuse of a student. See <u>Doe</u>, 292 F. Supp. 3d at 708. Plaintiffs submit that the failure to take corrective action included the failure to provide counseling to the students to remedy their harm as pled in Count II of Plaintiffs' Complaints. (e.g. See J.K. Complaint, No. 3:19-CV-01149-MEM, Doc. 1-2, ¶¶ 75-79).

2407690_1

In <u>Doe</u>, a plaintiff student brought claims under Title IX against a school district arising out of an elementary school custodian's sexual abuse of the student based upon a theory that the school's failure to take corrective action after the custodian's arrest and confession caused the harm suffered by the student subsequent to the confessed abuse. <u>Id</u>. at 690. There, defendants moved for summary judgment on the student's Title IX claim, contending their failure to provide counseling does not amount to a viable cause of action. <u>Id</u>. at 710. The <u>Doe</u> Court explicitly rejected each of the defendants' contentions that they could not be held liable under such a Title IX failure to remedy or take corrective action theory. <u>Id</u>. The Court examined Title 34 of the Code of Federal Regulations – which regulates nondiscrimination on the basis of sex in federally funded education programs – and relied on relevant guidance issued by the Office of Civil Rights in the form of a Dear Colleague Letter that states "once a school knows of sexual harassment of a student, **it must take steps not only to end the harassment, but also to 'prevent its recurrence, and remedy its effects**.'" <u>Id</u>. (emphasis added).

The <u>Doe</u> Court also noted that Office of Civil Rights policy dictates that "**[i]n addition to counseling** or taking disciplinary action against the harasser, **effective corrective action may require remedies for the complainant**, as well as changes to the school's overall services or policies." <u>Id</u>. (citing U.S. Dep't of Educ., Office for   Civil   Rights,   Dear   Colleague   Letter   (April   4,

2011),www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf)(emphasis added). Further, the <u>Doe</u> Court determined that such theory should be presented to a jury to decide, holding that "plaintiff has presented sufficient evidence from which a jury could conclude that **the School Board acted with deliberate indifference to** [custodian's] **confessed abuse of Doe by failing to offer counseling or other remedial measures to Doe**." <u>Id</u>. (emphasis added).

Within Plaintiffs' Complaints, there can be no doubt that Plaintiffs have sufficiently stated a plausible Post-May 2017 claim to relief under Title IX. The Complaints properly allege that (1) Defendant CTC received federal assistance; (2) each student was subjected to discrimination; (3) the administrators of CTC had actual notice/knowledge of the discrimination; and (4) despite this knowledge, Defendant CTC failed to take corrective action and remedy the effects of the discrimination by providing, offering, recommending or coordinating adequate health, psychological, counseling and academic assistance and services to Plaintiffs to help remedy the harm suffered. (e.g. See J.K. Complaint, No. 3:19-CV-01149-MEM, Doc. 1-2, ¶¶45-46). As noted in section A. above, Plaintiffs' Complaints, describe " 'enough facts to raise a reasonable expectation that discovery will reveal evidence of '[each] necessary element" of the claims alleged in the complaint" and allege facts that "justify moving the case[s] beyond the pleadings to the next stage of the litigation." <u>Phillips</u>, *supra* at 234-35. As a result, Defendant CTC's motion to

dismiss Plaintiffs' causes of action under Count II should be denied at this early stage of the proceedings.

**C. Plaintiffs have sufficiently shown that they have a plausible retaliation claim to relief under Title IX, 20 U.S.C. §1681 against Defendant Career Technology Center of Lackawanna County.**

The Supreme Court of the United States has held that retaliation against a person because that person complained of sex discrimination is a form of intentional sex discrimination encompassed by Title IX's private cause of action. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005). In order to state a claim for retaliation under Title IX, a plaintiff must allege: (1) that he engaged in conduct protected by Title IX; (2) that the defendant took adverse action against him; and (3) that a causal link existed between the protected conduct and the adverse action. E.N. v. Susquehanna Twp. Sch. Dist., No. 1:09-CV-1727, 2010 WL 4853700, at *17–18 (M.D. Pa. Nov. 23, 2010)(citing Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 201 (3d Cir.1994)).

Defendant CTC revives its argument that Title IX does not require any sort of remedial relief to the harm suffered by the abused students and further contends that Plaintiffs have failed to plead plausible facts that Defendant CTC "through its administration, employees, and staff took adverse action against Plaintiff, or for that matter, plausible facts that a causal link existed between the protected conduct and the alleged adverse action." (e.g. No. 3:19-CV-01149-MEM, Doc. 11 at p. 16). A

23

review of Plaintiffs' Complaints in conjunction with the required elements demonstrates that Plaintiffs have sufficiently alleged claims for retaliation under Title IX.

### (1) The Complaints sufficiently allege that the abused students engaged in protected activity under Title IX.

Within Count III of Plaintiffs' Complaints, it is specifically set forth that each minor was retaliated against for his involvement in the sexual abuse scandal and his "reporting of the sexual abuse by Richard Humphrey and/or cooperation with law enforcement authorities." (e.g. See J.K. Complaint, No. 3:19-CV-01149-MEM, Doc. 1-2, ¶85). Protected activities under Title IX include complaints of sexual discrimination to the courts, government agencies, or the funding recipient. E.N., 2010 WL 4853700, at *18 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). Therefore, Plaintiffs successfully meet the first prong of the test for retaliation under Title IX.

### (2) The Complaints sufficiently allege that Defendant CTC took adverse action against the abused students when the students reported what occurred and cooperated with authorities.

The District Court in E.N. described the appropriate standards for the second and third elements of a Title IX retaliation claim:

> The adverse action "need not be great in order to be actionable, but it must be more than *de minimis.*" *Young,* 2008 WL 417739 at *4 (citing *McKee v. Hart,* 436 F.3d 165, 170 (3d Cir.2006)) (quoting *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir.2000)) (internal quotations omitted). The retaliation must be "materially

adverse" such that it would dissuade a reasonable person from coming forth with the charge. *Dawn L.,* 586 F.Supp.2d at 374–75 (citing *Burlington,* 548 U.S. at 77–78). Furthermore, the action must be **motivated by "retaliatory animus."** *Id.* (citing *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281, 284 (3d Cir.2000)). When the victim of retaliatory action cannot readily show the intent of the parties, **retaliatory intent may be assumed at the pleading stage from close proximity of the protected conduct and the tangible action**. *See Farrell,* 206 F.3d at 280 (discussing temporal proximity).

E.N. v. Susquehanna Twp. Sch. Dist.,2010 WL 4853700, at *17 (M.D. Pa. Nov. 23, 2010).

With regard to these elements of a retaliation claim under Title IX, Plaintiffs have alleged that each student was singled out by Defendant CTC and treated differently than those students who were not subject to sexual harassment and abuse by Richard Humphrey (e.g. See J.K. Complaint, No. 3:19-CV-01149-MEM, Doc. 1-2, ¶49). In particular, Plaintiffs' Complaints allege that Defendant CTC publicly ridiculed the abused students in the days after Richard Humphrey's arrest:

> Upon Richard Humphrey's arrest, Defendant CTC, by and through its employee Robert Hudak, an instructional aide or paraprofessional in the Automotive Technology class, addressed the class in the days after Richard Humphrey's arrest and accused the minor students, including Plaintiff J.K., of being liars and attempting to ruin Richard Humphrey's reputation and life, stating that he hopes that they all "get what they have coming to them." These totally inappropriate statements were made by Hudak in front of the entire class and were unquestionably intended to threaten and intimidate the victims of Humphrey's abuses, cause them to believe that their conduct in reporting the numerous instances of sexual abuse and molestations was inappropriate and/or obstruct their future cooperation with law enforcement authorities.

(e.g. See J.K. Complaint, No. 3:19-CV-01149-MEM, Doc. 1-2, ¶87). These "materially adverse" actions were just the beginning for the abused students. Plaintiffs' Complaints further highlight that Defendant CTC, despite having actual knowledge and the authority to take corrective action to provide, offer, recommend or coordinate adequate health, psychological, counseling and academic assistance and services to Plaintiffs to help remedy or minimize the harm they suffered due to discrimination and harassment, instead deliberately and recklessly chose not to do so in retaliation for Plaintiffs' involvement in the sexual abuse scandal and reporting of the sexual abuse by Richard Humphrey and/or cooperation with law enforcement authorities. Id. at ¶82.

These allegations clearly demonstrate the necessary causal link that indicates a "retaliatory animus" on behalf of both Defendant CTC's employees and administrators. In addition, the close proximity alone of the students' reporting Humphrey's behavior and cooperating with authorities to the actions by Hudak and administrators withholding counseling and support would be sufficient to meet the causal link/retaliatory intent prong. Furthermore, each Plaintiff suffered various forms of retaliation by Defendant CTC as alleged in their Complaint:

### Plaintiffs J.K., R.P. (a minor), E.P., M.W. & T.W., M.W. and R.P.

These Plaintiffs each suffered direct retaliation by Defendant CTC when Robert Hudak ridiculed them in front of their peers and Defendant CTC failed to

provide any counseling for the abused students. Instead, Defendant CTC focused on

protecting itself from scandal and protecting the morale of the staff at the school.

(e.g. See J.K. Complaint, No. 3:19-CV-01149-MEM, Doc. 1-2, ¶48). Count III of

their respective Complaints summarizes the charges of retaliation, which materially

impaired their access to educational opportunities and benefits in violation of the

requirements of Title IX:

> a)    failing and refusing to provide, offer, recommend or coordinate adequate health, psychological, counseling and academic assistance and services to Plaintiff J.K. after he was sexually abused and/or harassed by Richard Humphrey; or being deliberately indifferent thereto;
>
> b)    failing to terminate or otherwise discipline employees and agents identified herein for their willful disregard of the safety and rights of Plaintiff J.K. and other minor students; or being deliberately indifferent thereto;
>
> c)    failing to provide necessary care, treatment and support of the minor students at the conclusion of the sexual abuse and/or harassment;
>
> d)    retaliating against the minor students, including Plaintiff J.K., rather than providing the necessary care, treatment and support of the minor students; and
>
> e)    accusing the minor students, including Plaintiff J.K., of being liars and attempting to ruin Richard Humphrey's reputation and life.

Id. at ¶48.

### Plaintiff J.R.

Plaintiff J.R., in addition to suffering through the retaliation by Robert Hudak and not being offered any counseling, also faced daily material adverse actions during his time at Defendant CTC. As further described in his Complaint, he was forced to ultimately graduate early because of various run-ins with the new Automotive Technology class instructor and other staff members, as a result of direct retaliation by Defendant CTC for the reporting of abuse by Richard Humphrey. In particular, at the conclusion of the 2018-2019 school year, Plaintiff J.R. was told he would not be receiving any awards when in fact there was a graduation ceremony that Plaintiff J.R. missed where his name was called to recognize his graduation, but he was absent for it, as a result of direct retaliation by Defendant CTC for the reporting of abuse by Richard Humphrey. (See J.R. Complaint, No. 3:19-CV-01150-MEM, Doc. 1-2, ¶¶49-52).

### Plaintiff B.W.

Plaintiff B.W., in addition to suffering through the retaliation by Robert Hudak and not being offered any counseling as set forth above, also faced daily material adverse actions during his remaining tenure at Defendant CTC by being called to the principal's office and/or reprimanded for trivial issues that no other non-sexually abused student was called out for. As further described in his Complaint, and by way of additional representative examples, George Pelepko-

28

Filak, CTC's Assistant Director, actively and continuously bullied and retaliated against Plaintiff B.W. in front of other students and teachers; threatened to expel B.W. because he put his feet up on a desk; for no valid reason, refused to approve B.W.'s participating in a prestigious Co-Op program during the 2017-2018 school year, through which B.W. would have gained invaluable field experience in automotive mechanics/repair and potentially could have made career contacts, even though B.W. had earned the privileges of participating in that coveted program through his grades, attendance record and teacher recommendations; threatened to kick B.W. out of the Co-Op program during the 2018-2019 school year, which B.W. had again earned the right to participate in, if he heard a single negative thing about B.W.'s performance; refused to grant B.W., who was cooperating with law enforcement, the same lunch privileges he granted to other CTC students; for no valid reason, took away B.W.'s "live privileges" that allowed him to work on his own vehicles in the CTC shop while affording similar privileges to other students who had not been victimized by Humphrey or involved in the police investigation; and threatened to not allow B.W. to walk for graduation ceremonies along with his other classmates, telling B.W. that he would instead mail his diploma and "maybe it will get there, maybe it won't."  On the day of B.W.'s graduation, Filak approached B.W. and said in a childish and sarcastic manner, "I'm really going to miss you." (See B.W. Complaint, No. 3:19-cv-01146 Doc. No. 2, ¶¶ 46-48, 85, 86).

29

Within Plaintiffs' Complaints, it is clear that Plaintiffs have sufficiently stated a plausible retaliation claim to relief under Title IX. The Plaintiffs have sufficiently alleged: (1) that they engaged in conduct protected by Title IX when they cooperated with authorities regarding Richard Humphrey's conduct; (2) that Defendant CTC took adverse action against them by singling them out and treating them differently than the students who did not suffer abuse by Humphrey; and (3) that a causal link existed between their protected conduct and the adverse action in response by Defendant CTC. As noted in the previous sections, Plaintiffs' Complaints describe " 'enough facts to raise a reasonable expectation that discovery will reveal evidence of '[each] necessary element" of the retaliation claims alleged in the complaint" and allege facts that "justify moving the case[s] beyond the pleadings to the next stage of the litigation." Phillips, *supra* at 234-35. As a result, Defendant CTC's motion to dismiss Plaintiffs' causes of action under Count III should be denied at this early stage of the proceedings.

**D.  Plaintiffs' Allegations in Count IV alleging violations of their Fourteenth Amendment Due Process Rights, 42 U.S.C. § 1983 are sufficient pursuant to F.R.C.P. 8(a)(2) and *Iqbal* to withstand Defendant's Motion to Dismiss.**

In Count IV of their Complaint, Plaintiffs have properly pleaded a claim under § 1983 and Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658 (1978).  Specifically, Paragraphs 96 through 99 of Plaintiffs' Complaints state as follows:

96.     Defendants, by and through their agents, employees, servants and officers, as state actors, subjected Plaintiff ██. to violations of his Constitutional right as a public school student to personal security and bodily integrity as well as his right to be free from sexual misconduct and/or sexual abuse and/or sexual harassment at the hands of an employee of the public school system such as Richard Humphrey.

97.     In subjecting Plaintiff ██. to these violations, Defendants, by and through their agents, employees, servants and officers, as state actors, failed to investigate Richard Humphrey's conduct; failed to adequately supervise Richard Humphrey; failed to suspend or fire Richard Humphrey; failed in its hiring and investigation of Richard Humphrey by not having an appropriate and thorough background check; failed to adequately train Richard Humphrey and other school district employees on how to maintain/protect/preserve minor students to prevent sexual misconduct and/or sexual abuse and/or sexual harassment in the form of sexual advances and sexual contact by teachers and/or prevent/stop the abuse by Richard Humphrey of minor students including Plaintiff ██.; and in so doing manifested a deliberate indifference to the adverse effect of Richard Humphrey's misconduct and the effect of same upon students, including Plaintiff ██.

98.     Plaintiff ██ avers that Defendants had and have unconstitutional customs and policies of failing to investigate evidence of public school district employees' misconduct, sexual abuse and/or sexual harassment against school district students in the nature of their violations of their right to personal security, bodily integrity, as well as their right to be free from sexual misconduct and/or sexual abuse and/or sexual harassment, and failing to adequately supervise and train school district employees with regard to maintaining, preserving and protecting students from violation of their right to personal security and bodily integrity.

99.     The conduct of Defendants, by and through their agents, employees, servants and officers and other school district personnel, as set forth above, acting under color of state law, in

31

failing to put in place and enforce policies to adequately protect students from inappropriate conduct by teachers, was committed in deliberate and/or conscious disregard of the substantial and/or unjustifiable risk of causing harm to Plaintiff, ██., and was so egregious as to shock the conscience.  Said conduct was the cause of Plaintiff ██.'s harm.

(e.g. See M.W. Complaint NO. 3:19-CV-01154-MEM, Doc. 1-2 at ¶¶96-99).

Pursuant to the Due Process Clause of the Fourteenth Amendment, Plaintiffs herein have the right to be free from sexual misconduct and/or sexual abuse and/or sexual harassment at the hands of an employee of the public school system.  Section 1 of the Fourteenth Amendment states:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Plaintiffs have alleged proper claims of civil rights violations under 42 U.S.C. §1983, which is one of the primary means by which a plaintiff may assert a federal civil rights claim for damages against schools and school officials for sexual misconduct and/or sexual abuse and/or sexual harassment of a student at the hands of a school employee.  Section 1983 was enacted as Section 1 of the Civil Rights Act of 1871 and can be invoked whenever state or local government officials violate federally guaranteed rights.  <u>Monroe v. Pape</u>, 365 U.S. 167 (1961), *overruled*,

Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658 (1978).

Section 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

42 U.S.C. §1983.  To establish a claim under Section 1983, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States. . . by a person acting under color of state law."  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

In Monell v. Department of Soc. Servs., 436 U.S. 658 (1978), the U.S. Supreme Court held that local governmental units, such as school districts, are considered persons to which Section 1983 applies.  The local governmental unit, or school district, for example, can be held liable in instances where the plaintiff's deprivation of rights results from custom, policy or practice.  Id. at 659.  The Supreme Court explicitly stated in Monell:

> . . .Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal

> approval through the body's official decisionmaking channels. As Mr. Justice Harlan, writing for the Court, said in Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970): "Congress included customs and usages [in §1983] because of the persistent and widespread discriminatory practices of state officials. . . .Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law.

Id. at 690.  See also Natale v. Camden County Correctional Facility, 318 F.3d 575 (3d Cir. 2003), citing, Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996) and Bd. Of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397 (S. Ct. 1997).

In a case addressing whether a plaintiff's Fourteenth Amendment rights were violated when insulin was withheld from him while incarcerated, the United States Court of Appeals for the Third Circuit explained the scenarios giving rise to liability under Monell related to a governmental entity's "policy or custom," stating:

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  Bryan County, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J, dissenting).  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Id. Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policy maker can reasonably be said to have been deliberately

34

indifferent to the need.'" <u>Id</u>. at 417-18, 117 S.Ct. 1382 (quoting <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also* <u>Berg</u>, 219 F.3d at 276 (holding that plaintiff must "demonstrate[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

<u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003). In the <u>Natale</u> case, *supra*, the Third Circuit Court of Appeals denied summary judgment and stated that "[a] reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs." <u>Id</u>. at 585.

To establish a claim on a municipal liability theory against a school district pursuant to <u>Monell</u>, a plaintiff must show "the existence of an official policy or custom fairly attributable to the municipality that proximately caused the deprivation of their rights." <u>Semple v. City of Moundsville</u>, 195 F.3d 708, 712 (4th Cir. 1999). Further, the school district's liability based upon policy or custom can arise through an express policy, through the decisions of a person with final policymaking authority, through an omission that manifests deliberate indifference to the rights of citizens or students or through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.  A student of a public school and his or her parents may allege that they have been deprived of their constitutional rights by the decisions of a final policymaker or by a school district's failure to train

35

their staff on their policies.  See, e.g., Hill v. Cundiff, 797 F.3d 948, 976 (11th Cir. 2015).  And, in K.E. v. Dover Area School District, the court stated that "a school district's inaction subsequent to one or more reports of sexual abuse conveyed directly to school officials may also manifest deliberate indifference."

Similar to K.E. v. Dover, *supra*, here Plaintiffs have alleged that the Defendants were deliberately indifferent to the need, *first* to train employees to detect and report sexual abuse, and, *second*, to respond to reports of abuse.  In that case, a former student filed a federal lawsuit seeking damages from the Dover Area School District and Lincoln Intermediate Unit, among others.  The plaintiff alleged that her music teacher sexually abused her for several years beginning at age 11; that she reported the abuse to the school and intermediate unit at least twice; that the school staff and the music teacher persuaded her to recant her allegations; and that she suffered severe emotional distress during and since that time. The school defendants filed motions to dismiss the plaintiff's Section 1983 and Title IX claims. The court upheld the plaintiff's Fourteenth Amendment claims under the Monell policy or custom theory.  The court explained:

> A policy exists when a decisionmaker possess[ing] final authority to establish. . . [public] policy with respect to the action issues an official proclamation, policy or edit.  A custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law.  A plaintiff may also establish a policy or custom when a policymaker has failed to take affirmative action despite an obvious need to correct the inadequacy of existing practice which

36

is so likely to result in the violation of constitutional rights that inaction exhibits deliberate indifference to the need.

The latter theory is relevant *sub judice*.  K.E. asserted various Monell claims in her first amended complaint, which the court categorized as failure-to-train and failure-to-act theories of liability at the motion to dismiss stage.  K.E. reasserts the same claims in her second amended complaint.  Specifically, K.E. contends that the District and Lincoln were deliberately indifferent to the need, *first*, to train employees to detect and report sexual abuse, and *second*, to respond to reports of abuse.

A government entity exhibits deliberate indifference when it disregard[s] a known or obvious consequence of [its]. . .action. Failure to train amounts to deliberate indifference when it causes a pattern of cognate constitutional violations.  Under exceptional factual circumstances, a single incident which is the "obvious consequence of failing to provide" training may also serve to demonstrate deliberate indifference.  Alleged training deficiencies must closely relate to the constitutional injury.  The failure-to-act theory of liability is also governed by the foregoing principles.

In cases involving student sexual assault, a school district's failure to train its employees to detect or report signs of abuse may constitute deliberate indifference if the plaintiff establishes a pattern of causally-connected employee violations.  Similarly, a school district's inaction subsequent to one or more reports of sexual abuse conveyed directly to school officials may also manifest a deliberate indifference.

K.E. v. Dover Area School District, 2017 WL 4347393 at *5-6 (M.D. Pa. 2017)(citations omitted).  The court then stated that a reasonable jury could conclude that the School District was deliberately indifferent when handling the plaintiff's reports of abuse where the evidence showed that the plaintiff made several reports of the inappropriate touching to school officials who failed to take action against the

teacher.  Id. at *6.  The evidence also showed that the school district failed to train teachers regarding how to handle sexual abuse allegations.  Id.

In Chancellor v. Pottsgrove School Dist., 501 F. Supp.2d 695 (E.D. Pa. 2007), a former student who had an approximately ten-month-long sexual relationship with her band teacher brought suit pursuant to §1983, Title IX, and state laws against teacher, school district, and principal. The defendants moved for summary judgment, which was denied in part and granted in part.  Although the court denied summary judgment as to the plaintiff's claims under § 1983 wherein the plaintiff alleged that the school principal caused her injuries by (1) failing to supervise the teacher and (2) failing to investigate the teacher's conduct, the case is nonetheless instructive. See Id. at 709.  In denying summary judgment, the Eastern District adopted the following test to determine whether a teacher's supervisor could be liable under §1983 as set forth by the Fifth Circuit in a case where a high school teacher was having a sexual relationship with a student:

> A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school students [sic] constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that:
>
> (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and
>
> (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action

that was obviously necessary to prevent or stop the abuse; and

(3) such failure caused a constitutional injury to the student.

Id. at 709 (citations omitted).

Plaintiffs have alleged sufficient facts and intend to prove the following necessary elements: (1) the existence of a continuing, persistent, and widespread practice of unconstitutional misconduct by the School District's employees; (2) deliberate indifference to or tacit approval of such misconduct by the school district's policy making officials after notice to the officials of that particular misconduct; and (3) that the plaintiff was injured by virtue of the unconstitutional acts pursuant to the board's custom and that the custom was the moving force behind the unconstitutional acts.  See Shepard v. Kemp, 912 F. Supp. 120 (M.D. Pa. 1995, Nealon, J.).  The following facts, which Plaintiffs incorporated in Count IV of their Complaint, support their Monell claim:

**(1) Custom and Practice**

Plaintiffs have alleged that Defendant school employees knew of Richard Humphrey's improper touching and groping of minor male students and became aware that he was engaging in inappropriate and unwanted physical contact with his male students. (See e.g. M.W. Complaint NO. 3:19-CV-01154-MEM, Doc. 1-2 at ¶¶24-33, 109, 110).  Plaintiffs allege that despite this knowledge, Defendant never intervened in the classroom and did not warn the parents of the minor students.  See

39

Id.  In fact, Mr. Morgantini is alleged to have commented to the minor male students to ignore Richard Humphrey because "you know the way he is."   Id. at ¶ 28. Plaintiffs allege that Mr. Morgantini approached several minor male students in the class and acknowledged to them that he had witnessed some of Richard Humphrey's inappropriate behavior and advised the students that he would "keep an eye on [Humphrey] and would have to "do something" and/or speak with others if Richard Humphrey's inappropriate behavior continued, and that in another instance he acknowledged that Richard Humphrey's physical "ball-tapping" minor male students was "not right." Id. at ¶25. Mr. Morgantini was aware of Richard Humphrey's inappropriate conduct towards these minor male students, yet the same continued.  These allegations demonstrate that Defendant had a policy, practice, culture or custom of ignoring observed inappropriate sexual misconduct of one of its own teachers towards its minor male students.

Plaintiffs have also alleged that Mr. Morgantini and other teachers and administrators had a practice of not reporting and/or investigating the sexual misconduct of Richard Humphrey.  Id. at ¶30.  Plaintiffs have alleged that the staff and administrators of Defendant CTC were aware of the "open secret" of Richard Humphrey's inappropriate conduct with his students in their Automotive Technology class. Id. at ¶ 21.

These facts also support Plaintiffs' §1983 claims that Defendant had a policy,

practice, culture or custom of failing to adequately train and supervise their employees and administrators with regard to protecting students from violations of their right to personal security and bodily integrity.  The totality of the custom and practice of ignoring Richard Humphrey's inappropriate behavior towards minor male students resulted in Defendant's employees inadequately reporting and investigating Richard Humphrey's inappropriate behavior and failing to take affirmative action despite an obvious need to do so.  Further, Plaintiffs have adequately alleged that there is an underlying constitutional violation resulting from the Defendant's failures – i.e. violations of the Plaintiffs' personal security and bodily integrity in violation of the Fourteenth Amendment by virtue of Richard Humphrey's sexual misconduct, sexual abuse and/or sexual harassment.

### (2) Deliberate indifference

The above allegations of Plaintiffs' Complaints also support Plaintiffs' claims that teachers and administrators of Defendant CTC observed and/or were aware of Richard Humphrey's inappropriate conduct and exhibited deliberate indifference in the face of a known threat – i.e. that he was sexually assaulting students.  The very pervasiveness of Richard Humphrey's inappropriate conduct and the fact that it was an "open secret" at Defendant CTC is evidence that Defendants turned a blind eye and allowed the conduct to continue.  The Plaintiffs' Complaints allege that during the entire 2016-2017 school year, Richard Humphrey made repeated unwanted

41

sexual advances to several minor male students in his Automotive Technology class including rubbing their backs, shoulders, and thighs; caressing their genital areas; following a male student into the restroom and offering to "dab" the student's penis after he urinated; offering students "special privileges" in class, etc.  Id. at ¶¶20-22.

This repeated and pervasive conduct was known to other school employees and was an "open secret" among the students, staff and administrations of the Defendants.  Id. at ¶¶24, 25, 32, 33, 109, 100.  That Richard Humphrey's conduct was an "open secret" to Defendant CTC yet his behavior was permitted to continue supports Plaintiffs' claims that Defendant was deliberately indifferent to the rights of the minor male students at Defendant CTC.

### (3) Failure to train

In Pennsylvania, teachers and school personnel are mandatory reporters of suspected child abuse pursuant to 23 Pa. C.S.A. § 6311, meaning that they have an affirmative obligation to report suspicions of abuse.   The administrators of Defendant CTC would also have a duty to disclose the report of child abuse to Childline and to facilitate the investigation of the report of child abuse. Id. at ¶¶29-30.  Pursuant to these mandatory reporting requirements, school personnel should receive training on how to look for suspicious behavior indicative of sexual misconduct, and to take affirmative steps such as asking questions to ensure that students are not being victimized.   Plaintiffs have alleged that Mr. Morgantini is a

42

mandatory reporter pursuant to Pennsylvania law, and he should have been trained to identify and report suspected abuse. Here Plaintiffs have specifically alleged that if Mr. Morgantini, who allegedly observed Richard Humphrey's misconduct, failed to report this behavior to the Defendant's administration, then it is a direct implication of Defendant's failure to train its school employees on how to maintain/protect/preserve minor students to prevent sexual misconduct and/or sexual harassment in the form of sexual advances and sexual contact by teachers and/or prevent/stop the abuse by Richard Humphrey of minor students, including the Plaintiffs. Id. at ¶ 98.

If discovery shows that Mr. Morgantini did, in fact, report his observations and suspicions to Defendant CTC, then Defendant should have taken some action to end the conduct. The Defendant's failure to take action is evidence of both (1) the Defendant's deliberate indifference to the need to adequately monitor Richard Humphrey and protect students from his sexual misconduct and investigate the inappropriate conduct, and (2) their failure to train school personnel on how to maintain/protect/preserve minor students to prevent sexual misconduct, sexual abuse and/or harassment from occurring.

As a result of the above, Defendant CTC's motion to dismiss Plaintiffs' causes of action under Count IV should be denied at this early stage of the proceedings.

**E. Plaintiffs Have Adequately Pled A §1983 Claim On A State-Created Danger Theory.**

To establish a claim under 42 U.S.C. § 1983, Plaintiffs must establish that "defendants, acting under color of law, violated [his] federal constitutional or statutory rights, and thereby caused the complained of injury." Mann v. Palmerton Area School District, 33 F.Supp.3d 530, 537 (M.D. Pa. 2014) (quoting Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005) (citing Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998)). While "the due process clause of the Fourteenth Amendment does not impose an affirmative duty on the state to protect its citizens from harms caused by other private citizens . . . 'an exception to this general rule exists that is known as the 'state created danger' theory.'" Id. (quoting Moeck v. Pleasant Valley School District, 983 F.Supp.2d 516, 526 (M.D. Pa. 2013) (citing D.R. by L.R. v. Middle Bucks Area Vocational Tech Sch., 972 F.2d 1364, 1373 (3d Cir. 1992)); DeShaney v. Winnebago Cty. Dept. of Soc. Svcs., 489 U.S. 189, 195-96 (1989). In Kneipp v. Tedder, 95 F.3d 1199, 1201 (3d Cir. 1996), the Third Circuit first adopted the state created danger theory as a mechanism by which a plaintiff may establish constitutional violations under Section 1983, if an individual incurs harm as a direct result of certain state actions. Id. In other words, "liability may attach where the state acts to *create* or *enhance* a danger that deprives a plaintiff of his or her Fourteenth Amendment rights to substantive due process." Morrow v. Balaski, 719 F.3d 160, 177 (3d Cir. 2013) (emphasis in original). In

44

Bright v. Westmoreland Cty., 443 F.3d 276, 281 (3d Cir. 2006), the Third Circuit articulated the following four factor test to determine whether a plaintiff has stated a claim under the state created danger theory:

(1) The harm ultimately caused was foreseeable and fairly direct;

(2) A state actor acted with a degree of culpability that shocks the conscience;

(3) A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Id.

Defendant provides a general contention that Plaintiff failed to satisfy the four elements necessary to establish a state created danger claim but provide no further elaboration or support for this assertion.  (See e.g. NO. 3:19-CV-01154-MEM, Doc. 8 at 35).  Despite Defendant's bald statement, a review of Plaintiffs' Complaints clearly show the adequacy of the pleadings to withstand Defendant's instant Motion to Dismiss.

### (1)   The Complaints sufficiently allege that the harm ultimately caused was foreseeable and fairly direct.

In Phillips v. Cty. of Allegheny, 515 F.3d 224, 238 (3d Cir. 2008), the Third

Circuit explained that "[t]o adequately plead foreseeability . . ., we require a plaintiff to allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm."  It is sufficient to allege facts that "ordinary common sense and experience [would] sufficiently inform [] the [defendant] of the foreseeability of the harm to the [plaintiff]."  Id. at 237 (citing Kneipp, 95 F.3d at 1199).  For instance, in L.R. v. School Dist. of Phila., 836 F.3d 235 (3d Cir. 2016), the court found it "foreseeable that releasing a young child to a stranger could result in harm to the child."  Id. at 245; see also Kneipp, 95 F.3d at 1208 (finding that it was foreseeable that abandoning an intoxicated woman alone in cold weather late at night would result in harm to the woman); Mann, 33 F.Supp. 3d at 537 (finding that foreseeability element was met by plaintiff alleging that coaches knew or should have known that brain injuries were a common hazard in football and that they knew or should have known that continuing to practice after injury increased risk of further significant injury).

Here, the Complaints contain numerous allegations that the harm Plaintiffs suffered was foreseeable.  Specifically, the Complaints allege that during the 2016-2017 school year, Richard Humphrey made unwanted sexual advances towards several minor male students in the class, including Plaintiff, including rubbing their backs and shoulders, putting his arms around them, acting in a creepy and weird

fashion, groping, caressing and/or slapping their genital areas, following a male student into the bathroom and offering to "dab" the student's penis after he urinated, speaking to them in a complete inappropriate, vulgar and sexually suggestive manner; offering students "special privileges" so that they could come to class early or stay late and then exploit the opportunities he self-created through granting these so-called "special privileges" so that he could carry out his sick, twisted and perverted proclivities through further acts of molestation and sexual abuse of male students.  (e.g. See B.W. Complaint, NO. 3:19-CV-01154-MEM, Doc. 2, at ¶¶ 20, 22). That many of these inappropriate sexual advances, abuses and/or student molestations occurred in the classroom with at least one other adult teacher/teacher's aide present, including Joseph Granteed, Robert Hudak, and/or Louis Morgantini, and that employees and officials of Defendant knew of Richard Humphrey's proclivity to engage in improper touching and groping of minor male students and other inappropriate behavior; that school employees and officials were aware that Richard Humphrey was using vulgar, fowl and sexually explicit language in the classroom, constantly engaging in inappropriate and unwanted physical contact with his minor male students by placing his hands on their shoulders, backs and private regions; and that the above described inappropriate conduct and abusive behavior by Humphrey was an open secret among the students in the classes as well as the staff and/or administrators of Defendant.  Id. at ¶¶ 24, 25, 109, 110.  Indeed, Plaintiff also

47

alleges that the adult teacher/teacher's aide Louis Morgantini approached minor male students in the class and acknowledged that he had witnessed some of Humphrey's inappropriate behavior and advised the students that he would "keep an eye on [Humphrey]" and would have to "do something" and/or speak with others if Humphrey's inappropriate behavior continued, and that in another instance acknowledged that Humphrey's physical "ball-tapping" male minor students was "not right".  Id. at ¶¶ 27, 28.  On yet another occasion, Louis Morgantini was approached by a group of minor male students and told him that they felt uncomfortable with Richard Humphrey rubbing another minor student's shoulders. Id. ¶29.  Additionally, Plaintiffs further aver in the Complaints that the above described inappropriate behavior, conduct and abuse was open, widespread and known by students, staff, and Defendant.  Id. at ¶¶ 32, 33.

Taking these allegations as true, Plaintiffs have adequately alleged that the harm the students suffered was foreseeable.  Moreover, the above actions and inactions of Defendant in their deliberate indifference to Plaintiffs caused Plaintiffs' injuries.  The above allegations go well beyond being "fairly direct" and into the realm of direct, as it was Defendant's actions that were the direct catalysts for the harm for which Plaintiff suffered.  See Henry v. Cty. of Erie, 728 F.3d 275, 283 (3d Cir. 2013); Cuvo v. Pocono Mtn. School Dist., Civ. No. 3:18-01210, 2019 WL 1424524 (M.D. Pa. Mar. 29, 2019).  Accordingly, Plaintiffs have satisfied the

foreseeability and "fairly direct" element of their state created danger claims.

> **(2)    The Complaints sufficiently allege that a state actor acted with a degree of culpability that shocks the conscience.**

The Third Circuit has articulated that "the measure of what [action] is conscience shocking is no calibrated yard stick." Kaucher v. Cty. of Bucks, 455 F.3d 418, 425 (3d Cir. 2006).  In Sanford v. Stiles, 456 F.3d 298 (3d Cir. 2006), the Third Circuit clarified "the standard of fault in state created danger cases." Id. at 305.  The court explained that, "[i]n any state created danger cases, the state actor's behavior must always shock the conscience.  But what is required to meet the conscience-shocking level will depend upon the circumstances of each case, particularly the extent to which deliberation is possible." Id. at 310.  The Stiles court continued:

> The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases.  In a hyperpressurized environment, an intent to cause harm is usually required.  On the other hand, in cases where deliberation is possible, and officials have the time to make unhurried judgments, deliberate indifference is sufficient . . . deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known.

Id. at 309.  In the deliberate indifference context, it is unnecessary for the plaintiff to prove that the state actor had actual knowledge that his or her actions were conscience-shocking.  Rather, the state actor need only have been indifferent to "a foreseeable danger or risk." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 910 (3d Cir. 1997).  As the court has explained, it is possible "that indifference might

exist without actual knowledge of harm when the risk is so obvious that it should be known."  Phillips, 414 F.3d at 240; Kaucher, 455 F.3d at 427 (same).

As the aforesaid authorities make clear, the ability for Defendant to deliberate is essential.  Here, Defendant knew or should have known of Richard Humphrey's sexual abuse on minor male students, including Plaintiffs, for a **year**.  Defendant, its employees/agents had a **year** to deliberate the consequences of Richard Humphrey's sexual abuse, yet, permitted Richard Humphrey unfettered access to sexually abuse and molest the minor students, including Plaintiffs.  Indeed, the Complaints' allegations (taken as true) demonstrate that Defendant had actual knowledge and awareness of the risk of harm inherent in allowing Richard Humphrey continued access to the minor male students.  Plaintiffs' allegations adequately allege the deliberate indifference standard for conscience-shocking conduct, that there was a foreseeable and dangerous risk of harm that the state actor confronted and ignored, and as such, the second element of the state created danger claim has been met.

### (3)    The Complaints sufficiently allege that a relationship between the state and the Plaintiffs existed.

To establish the third element of a state created danger theory of liability, a plaintiff must demonstrate that there was a relationship between him and the state such that the plaintiff was "a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions."  Bright, 443 F.3d at 281; Stiles, 456 F.3d at 304; see also Kneipp,

50

95 F.3d at 1209 n. 22 (this requirement "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort case.").  It has been affirmatively established that a student attending classes within a public school district satisfies the "special relationship" element of a state created danger claim. See Hamilton v. Spriggle, 965 F.Supp.2d 550, 593 (M.D. Pa. Aug. 14, 2013) (holding that "since K.H. was a student . . . who attended classes within the school district, and within Spriggle's classroom under the supervision of the intermediate unit" the relationship factor has been satisfied); Cuvo, 2019 WL 1424524, at * 5 (providing that a public school plaintiff's claims against state actors, public school teachers/coaches, satisfies the "special relationship" element).

Here, Plaintiffs have alleged that they were enrolled at the Career Technology Center of Lackawanna County and Valley View School District during the 2016-2017 school year, and that Richard Humphrey was employed by Defendant Career Technology Center and was authorized by Career Technology Center and Valley View School District to teach and was acting under color of state law.  (e.g. See B.W. Complaint, NO. 3:19-CV-01154-MEM, Doc. 2, at ¶¶ 5,6, 8, 12, 17, 112). Accordingly, Plaintiffs have alleged sufficient facts concerning the relationship between the minor students and the state actor to satisfy the "special relationship" element.  See Hamilton, 965 F.Supp.2d at 593; Cuvo, 2019 WL 1424524, at * 5.

**(4)     The Complaints sufficiently allege that the state actor affirmatively used his authority in a way that created a danger to Plaintiffs.**

The state created danger doctrine's "affirmative act" requirement is met where the plaintiff alleges and subsequently shows that "a state actor used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." Bright, 443 F.3d at 281. The crux of the analysis is whether the state actor's affirmative acts created the danger that resulted in the plaintiff's injuries, or whether the state actor merely failed to intervene to prevent an otherwise encroaching danger from overtaking the plaintiff. See Id. While "the line between action and inaction is not easily drawn," an affirmative act is not overly difficult to identify. Morrow, 719 F.3d at 177. "If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." Id. Put simply, an affirmative act occurred where state actors "used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." Mark v. Borough of Hatboro, 51 F.3d 1137, 1152 (3d Cir. 1995).

For instance, in Hamilton, a minor student enrolled in a public school suffered abuse from a teacher, Spriggle throughout the 2005-2006 school year, including the use of aversive techniques, inappropriate restraints, and physical abuse. Hamilton, 965 F.Supp.2d at 571. Teacher's aides working in Spriggle's classroom were aware

of this abusive conduct, but little if anything was done in response.  Id. at 571-72.

Similar to the instant matter at hand, Spriggle's conduct was eventually learned by

law enforcement who undertook a criminal investigation and ultimately charged and

convicted Spriggle of abusing the minor plaintiff.  Id. at 572.

In examining the fourth element of the state created danger claim, the

Hamilton court examined numerous Third Circuit Court holdings addressing this

element, including Rivas v. City of Passaic, 365 F.3d 181, 197 (3d Cir. 2004),

articulating the test as to "'whether the state actor used his or her authority to create

an opportunity, which otherwise would not have existed, for the specific harm to

occur,' and that '[w]ere it not for [the state's] acts,' no harm would have befallen the

plaintiff."  Hamilton, 965 F.Supp.2d at 594.  While the defendants argued that the

plaintiff's evidence showed inaction on the part of the school and its employees, but

did not show evidence of an affirmative action that caused the plaintiff to be injured

or made more vulnerable, in denying the defendants' motion for summary judgment

on the state created danger claim, the Hamilton court noted that the Third Circuit

and other courts "have recognized as an almost metaphysical distinction between

what constitutes an act or an omission on the part of a state actor:

> We do not want to pretend that the line between action and
> inaction, between inflicting and failing to prevent the
> infliction of harm, is clearer than it is.  If the state puts a
> man in danger from private persons and then fails to
> protect him, it will not be heard to say that its role was
> merely passive; it is as much an active tortfeasor as if it

had thrown him into a snake pit.

Id. at 595.

The Hamilton court went on to find that based upon the plaintiff's allegations and evidence, the school district employees were aware, on multiple occasions, of complaints regarding Spriggle's abusive actions, that some type of investigation by the school employees was performed, that school employees never intervened in the classroom, that no communication of the abuse was made to the parents of the minor child, and that the parents of the abused minor child were uninformed of Spriggle's mistreatment of their son.  Id. at 597-98.  The court noted that this last factor was "particularly important . . . since the failure of [the school employees] to share any information with the parents during the school year could have had a direct bearing on whether these parents could take steps that may have prevented [the minor plaintiff] from being subjected to improper treatment."  Id. at 598.  The court found that this "could be seen as the kind of active involvement that greatly increased the possibility that [the minor plaintiff] could face harm."  Id.  The court also stated that the evidence that school employees were aware of the abuse but deferred the matter, while may come closer to constituting inaction or omission rather than overt action, and found that the "evidence could be construed as showing a calculated decision . . . that increased [the minor plaintiff's] vulnerability to harm."  Accordingly, the state

created danger claim survived the motion for summary judgment.[1]

Like in <u>Hamilton</u>, Plaintiffs have alleged that the Defendant school employees knew of Richard Humphrey's engagement in improper touching and groping of minor male students and became aware that he was engaging in inappropriate and unwanted physical contact with his minor male students. (e.g. See B.W. Complaint, NO. 3:19-CV-01154-MEM, Doc. 2, at ¶¶ 24 – 33, 109, 110).  Plaintiffs allege that despite this knowledge, Defendant never intervened in the classroom, <u>Id</u>.; did not warn the parents, <u>Id</u>. at ¶ 60(d); and in fact, one of the Defendant CTC's employees simply stated of Richard Humphrey's conduct, "you know the way he is" <u>Id</u>. at ¶ 29. Here, just as in <u>Hamilton</u>, these allegations show a calculated decision that was made by Defendant which increased Plaintiffs' vulnerability to harm.  Indeed, but for the state actors authority to create the opportunity for Richard Humphrey to continuously sexually molest minor students, including Plaintiffs, it would otherwise not have existed.  <u>Mark</u>, 51 F.3d at 1152.  Consequently, Defendant CTC's motion to dismiss should be denied.

## F. Plaintiffs' Count VI adequately pleads a §1983 Failure to Train/Supervise claim.

In order to establish municipal liability on a failure to train claim under §1983,

---

[1] Plaintiffs note that the <u>Hamilton</u> court found facts similar to the instant matter sufficient to warrant the denial of the defendants' motion for summary judgment in that matter and to allow the case to proceed to trial.  Here, the matter is before the Court on a Motion to Dismiss, and Plaintiffs have not yet had the benefit of discovery.

a plaintiff must "identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Reitz v. Cty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).  A plaintiff must "show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Sullivan v. Warminster Twp., 765 F. Supp. 2d 687, 703-04 (E.D. Pa. 2011) (quoting Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998)).  See Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) ("Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations.").  Courts recognize that "a failure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights."  Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989)).

The Third Circuit applies a three-part test to determine whether the deliberate indifference requirement has been met:

> it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the

> situation involves a difficult choice or a history of
> employees mishandling; and (3) the wrong choice by an
> employee will frequently cause deprivation of
> constitutional rights.

Carter, 181 F.3d at 357 (citing Walker v. City of N.Y., 974 F.2d 293, 297-98 (2d

Cir. 1992)).

Notice is critical to a failure to train theory. "Without notice that a course of

training is deficient in a particular respect, decisionmakers can hardly be said to have

deliberately chosen a training program that will cause violations of constitutional

rights." Connick v. Thompson, 563 U.S. 51, 62 (2011). Accordingly, a pattern of

similar constitutional violations is ordinarily required to show deliberate

indifference in the context of a failure to train theory. Bryan Cty., 520 U.S. at 409;

see also Connick, 563 U.S. at 63 n.7 ("[C]ontemporaneous or subsequent conduct

cannot establish a pattern of violations that would provide notice to the city and the

opportunity to conform to constitutional dictates."). However, a plaintiff could also

succeed on a failure to train claim through the more narrow theory of demonstrating

that the single occurrence of a constitutional violation was a highly predictable

consequence of the failure to train employees. Berg v. Cty. of Allegheny, 219 F.3d

261, 276 (3d Cir.2000); Haines v. Forbes Rd. Sch. Dist., No. 1:07-CV-00851, 2009

WL 89323, at *3 (M.D. Pa. Jan. 13, 2009).

In Gallagher v. Borough of Dickson City, 3:06-CV-1626, 2007 WL 2480977

(M.D. Pa. 2007), Judge Munley denied defendants' motion to dismiss a failure to

57

train claim on the basis that "Plaintiff has pointed to specific, systematic failings by the borough when training employees to prevent incidents of sexual harassment. She alleges that she made the borough aware of the offending comments, and that officials did nothing to address [the offending officer's] behavior. These actions, she contends, provided a tacit endorsement for such harassing activities." Id. at *4.

Here, Plaintiffs allege that Defendant failed to properly train and supervise its respective teachers, administrators, officers, supervisors, agents, and/or employees as to mandated reporting and/or investigative requirements, which include:

> a. Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;
>
> b. Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects;
>
> c. Failing to promptly report Richard Humphrey's sexual abuse, exploitation and/or harassment of students, including Plaintiff B.W., in accordance with their legal obligations; and
>
> d. Failing to take reasonable and necessary steps to protect Plaintiff B.W. and other minor students from Richard Humphrey's abuses and/or from suffering the collateral harms and injures as described above.

(e.g. See B.W. Complaint, NO. 3:19-CV-01154-MEM, Doc. 2, at ¶ 133). In support of these allegations, Plaintiffs aver that:

> • "Prior to and during the period of the above described sexual abuses by Richard Humphrey, Defendants and other employees and officials of CTC and Valley View School District knew about Richard Humphrey's proclivity to engage in improper touching and groping of minor male students and/or other inappropriate behavior. Nonetheless, no

appropriate, effective, or adequate steps were taken to protect . . . Plaintiff . . . from Richard Humphrey's sexual abuse";

- "During the period of the above described sexual abuses of Richard Humphrey, Defendants and other school employees and officials became aware that Richard Humphrey was using very vulgar, fowl and explicit language in the classroom, engaging in inappropriate and unwanted physical contact with his minor students by rubbing their backs and shoulders, putting his arms around them, acting in a creepy and weird fashion and groping, rubbing and/or slapping their private regions, however, no proper inquiries were made and no corrective action was taken";

- "Defendants and their teachers, administrators, supervisors, officers, agents, and/or employees knew or should have known that their response to Richard Humphrey's sexual abuses and assaults of minor students, including Plaintiff . . . were required to comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations";

- "Defendant CTC, its agents, employees, servants and officers knew that Richard Humphrey regularly and inappropriately offered his minor students "special privileges" and allowed same to continue unabated and unsupervised";

- That the "inappropriate conduct and abusive behavior by Humphrey was an open secret among the students in the Automotive Technology class, among the students in the other classes at Defendant CTC and, upon information and belief, among the staff and/or administrators of Defendant CTC during Richard Humphrey's tenure in the Automotive Technology class";

- That "upon information and belief, after reasonable opportunity for further discovery and investigation, the above described inappropriate conduct and abusive behavior by Humphrey was also an open secret among the students, staff and/or administrators of Defendant Valley View School District during Richard Humphrey's tenure in the CTC Automotive Technology class";

- That "in early spring of March 2017, Louis Morgantini . . . approached other minor male students in the class and acknowledged that he had witnessed some of Humphrey's inappropriate behavior and advised said students that he would 'keep an eye on [Humphrey]' and would have to 'do something' and/or speak with others if Humphrey's inappropriate behavior continued, which, unfortunately, it did";

- That "on another occasion in or around March 2017, as Humphrey's inappropriate behavior and abuses continued, some other male students engaged in another conversation with Mr. Morgantini during which they specifically advised Mr. Morgantini that Richard Humphrey had made contact with minor male student's genital areas by "ball-tapping" them. Mr. Morgantini responded by acknowledging that such conduct by Humphrey "was not right";

- That on yet "another occasion during the 2017 Spring semester, as the inappropriate behavior and abuses by Humphrey continued, a group of male students had another discussion with Mr. Morgantini wherein they specifically told Mr. Morgantini that Richard Humphrey was rubbing another minor student's shoulders and making him feel uncomfortable and asked, "[W]hat's up with Mr. Humphrey?" Mr. Morgantini responded by telling the students not to worry about Mr. Humphrey and to just ignore him because "you know the way he is";

- That "Mr. Morgantini had an affirmative and non-delegable duty to report the aforementioned inappropriate behavior of Richard Humphrey and disclose what he had witnessed and/or learned from the students to the proper authorities including, but not limited to, the Administrators of Defendant CTC, Childline, and/or the Administrators of Valley View School District";

- That "the above described inappropriate behavior, conduct and abuses by Richard Humphrey was open, widespread and known by students, staff and Administrators of Defendant CTC" and by staff and Administrators of Defendant Valley View School District, including Board Members, principals and/or superintendents."

Id. at ¶¶ 23-33, 130-133.

Accepting these facts and all reasonable inferences therefrom as true, Plaintiffs have more than adequately alleged that the minor students have suffered a deprivation of a constitutional right, and that the alleged deprivation was due to the deliberate failure of Defendant CTC to train its employees.  Indeed, as highlighted for the Court in the allegations above, Plaintiffs have alleged that Defendant, including its policymakers, were on notice of the constitutional violations of Plaintiffs and many other male minor students for nearly a year. The above allegations demonstrate the contemporaneous knowledge of the offending incidents as well as knowledge of the prior pattern of similar incidents and circumstances under which the supervisor's actions or inactions could be found to have communicated a message of approval to the offending subordinates. See Montgomery, 159 F.3d at 127.  To be sure, accepting Plaintiffs' allegations as true, as well as Louis Morgantini's that he "would have to 'do something' and/or speak with others if Humphrey's inappropriate behavior continued," which it did, infers, then, that Morgantini did in fact notify the appropriate persons/policymakers of Defendant CTC well in advance of the Scranton Police investigation.

Additionally, Plaintiffs should have the benefit of discovery in this matter given their well pled allegations of the complaint.  See Carter, 181 F.3d at 357 (providing that the plaintiff should be allowed to pursue discovery in order to determine whether there was a practice or pattern of permitting constitutional

violations sufficient to require training or supervision); <u>Gallagher</u>, 2007 WL 2480977, at *4 ("If, after discovery, plaintiff can demonstrate that the Borough was aware of the offensive conduct of which she claims and did not provide any training to address such situations, she could prevail on this portion of her claim. Accordingly, we will deny defendants' motion to dismiss on this issue."). Consequently, Defendant CTC's Motion to Dismiss should be denied.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs herein respectfully request that Defendant CTC's Motion to Dismiss Count I through Count VI be denied in its entirety because Plaintiffs' Complaints sufficiently allege the requisite requirements of their causes of action under both Title IX and 42 U.S.C. § 1983.

**HOURIGAN, KLUGER & QUINN, P.C.**
*s/ Kevin C. Quinn* _____
Kevin C. Quinn, Esquire
Ryan M. Molitoris, Esquire
*Attorneys for Plaintiff B.W.*

**LENAHAN & DEMPSEY, P.C.**
*s/ John R. Lenahan, Jr.* _____
John R. Lenahan, Jr., Esquire
Lawrence J. Moran, Sr., Esquire
Christine S. Lezinski, Esquire
Matthew J. Butler, Esquire
*Attorneys for J.K, E.P, J.R., R.P.*

2407690_1

**ANZALONE LAW OFFICES, LLC**
*s/ Patrick J. Doyle, Jr.*_____
Patrick J. Doyle, Jr., Esquire
*Attorney for Plaintiff M.W.,T.W.,M.W*

**SCOTT SCHERMERHORN**
*s/ Scott Schermerhorn* _____
Scott Schermerhorn, Esquire
*Attorney for R.P.*

63

## <u>CERTIFICATE OF SERVICE</u>

I, Ryan M. Molitoris, Esq., certify that I served a true and correct copy of the

foregoing Omnibus Brief upon counsel of record via the Electronic Filing System.

**HOURIGAN, KLUGER & QUINN, P.C.**

By: *s/ Ryan M. Molitoris*_____
    RYAN M. MOLITORIS, ESQUIRE

600 Third Avenue
Kingston, PA 18704-5815
(570) 287-3000 (Telephone)
(570) 287-8005 (Facsimile)
rmolitoris@hkqlaw.com

2407690_1